UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

PNC BANK, NATIONAL ASSOCIATION,

                        Plaintiff,

               -against-                               22-CV-07011 (VF)

OPTIMITY ADVISORS, LLC, LRM                      **OPINION & ORDER**
PROPERTIES, LLC, RICK D. MCNABB, and LYNN
A. MCNABB,

                        Defendants.
---------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge.**

Pending before the Court is a letter motion filed by Defendants Optimity Advisors, LLC ("Optimity"), LRM Properties, LLC ("LRM"), Rick D. McNabb, and Lynn A. McNabb (collectively "Defendants") seeking permission to file a motion to dismiss under Federal Rule of Civil Procedure 12(b)(3) for improper venue or, alternatively, forum non conveniens. See ECF No. 22. Plaintiff PNC Bank, National Association ("PNC Bank") asks that the Court deem the letter a motion and deny it. See ECF No. 24. The Court construes Defendants' letter request as a motion, see Kapitalforeningen Loegernes Invest v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019), and for the reasons outlined below, denies Defendants' motion to dismiss.

## BACKGROUND[1]

The parties' dispute stems from a series of loans, pursuant to which PNC Bank lent money to Optimity and LRM, which are owned and controlled by Rick McNabb. See ECF No. 1 ("Compl.") ¶¶ 11-12. Essentially, PNC Bank lent Optimity funds under a series of agreements.

---

[1] The Court limits its recitation of the facts herein to only those necessary to the resolution of the pending motion.

1

See Compl. ¶¶ 15-25. PNC Bank also lent LRM money under various agreements. Id. ¶¶ 26-38. LRM gave PNC Bank a security interest in certain real property, including a building in Manhattan located at 111 East 19th Street. Id. ¶¶ 4, 30-33, 50, 52. By early 2019, several events of default, as described in the complaint, had occurred under the terms of the loans to Optimity and LRM. Id. ¶¶ 39-46, 53, 65, 67-70. To date, LRM and Optimity have failed to comply with their obligations to repay the funds owed to PNC Bank. Id. ¶¶ 70-73. PNC Bank alleges that Optimity owes approximately $3.7 million on loans which were guaranteed by LRM and Rick McNabb. Id. ¶ 67. LRM is alleged to owe approximately $3.6 million, guaranteed by Optimity, Rick McNabb, and Lynn McNabb. Id. ¶ 68. PNC Bank commenced the instant action to foreclose on the Manhattan building whose mortgages secure more than $7 million in defaulted debt owed by Defendants. Id. ¶¶ 76-77, 79-87.

The parties do not dispute that, as is relevant to the instant motion, a forum-selection clause similar to the following is in many of the loan documents for the Optimity loan, as well as the loan note for the LRM loan:

> This Agreement will be interpreted and the rights and liabilities of the bank and the borrower determined in accordance with the laws of the state where the bank's office indicated above is located, excluding its conflict of laws rules . . . *The Borrower hereby irrevocably consents to the exclusive jurisdiction of any state or federal court in the county or judicial district where the Bank's office indicated above is located; provided that nothing contained in this Agreement will prevent the Bank from bringing any action, enforcing any award of judgment or exercising any rights against the Borrower individually, against any security or against any property of the Borrower within any other county, state or other foreign or domestic jurisdiction*. The Bank and the Borrower agree that the venue provided above is the most convenient forum for both the Bank and the Borrower. The Borrower waives any objection to venue and any objection based on a more convenient forum in any action instituted under this Agreement.

2

See Compl. Ex. 1, § 10.16 (Governing Law and Jurisdiction) (emphasis added); see also Compl. Ex. 2, § 13; Compl. Ex. 8, § 13; ECF No. 22 at 2.; ECF No. 24 at 2. For the relevant loan documents, the "Bank's office indicated above is located" in the District of Columbia. See, e.g., Compl. Ex. 1, Preamble (listing office location); see also ECF No. 22 at 2.

On November 28, 2022, Defendants sought permission to file a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3). See ECF No. 22. According to Defendants, Plaintiffs were required to bring this action in the District of Columbia, to the extent they sought relief arising out of the loan agreements that contained the forum-selection clause discussed above. See ECF No. 22 at 1, 3. PNC Bank opposed the request. See ECF No. 24. PNC Bank argues that the forum-selection clause is not mutual because Defendants are *required* to sue in the District of Columbia, but PNC Bank is permitted, but not required, to do so. Id. at 2. The Court held a telephonic conference on December 16, 2022, to address Defendants' letter request. See ECF No. 29. At the parties request (see ECF No. 24 at 1; ECF No. 29 at 5), the Court construed Defendants' letter request as a motion.

## DISCUSSION

### A. Legal Standard

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex., 571 U.S. 49, 60 (2013). In deciding a motion to dismiss based on a forum-selection clause, "a district court typically relies on pleadings and affidavits," unless there are disputed facts that would require an evidentiary hearing. Martinez v. Bloomberg LP, 740 F.3d 211, 216-17 (2d Cir. 2014) (citations omitted). Where a defendant moves for dismissal under Federal Rule of Civil Procedure 12(b)(3) based on a forum-selection clause, a court may

"treat their motion as a motion to dismiss for *forum non conveniens*." SingularDTV GmbH v. LeBeau, No. 21-CV-10130 (VEC), 2022 WL 6771081, at *2 (S.D.N.Y. Oct. 11, 2022); see also AMTO, LLC v. Bedford Asset Mgmt., LLC, 168 F. Supp. 3d 556, 563 n.8 (S.D.N.Y. 2016) (construing motion "to enforce the forum-selection clause under [Rule] 12(b)(3) . . . as proceeding under the forum non conveniens doctrine") (citations omitted).[2]

The Second Circuit has set forth a four-part test for determining whether to dismiss a claim based on a forum-selection clause. See Phillips v. Audio Active Ltd., 494 F.3d 378, 383-84 (2d Cir. 2007); see also Martinez, 740 F.3d at 217-18. A court must first assess "whether the clause was reasonably communicated to the party resisting enforcement." Phillips, 494 F.3d at 383 (citation omitted). The court then determines whether the clause is mandatory or permissive—that is, the court decides "whether the parties are required to bring any dispute to the designated forum or simply permitted to do so." Id. (emphasis and citation omitted). At step three, the court "asks whether the claims and parties involved in the suit are subject to the forum selection clause." Id. (citation omitted). "If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable." Id. (citation omitted). At the final step, the court must determine "whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause

---

[2] Defendants styled their request as a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). See ECF No. 22 at 1. The Second Circuit has construed Rule 12(b)(3) motions to dismiss based on a forum-selection clause as motions under the forum non conveniens doctrine. See, e.g., Martinez, 740 F.3d at 214, 216 (affirming dismissal under forum non conveniens where the defendant moved under Rule 12(b)(3)); AMTO, LLC, 168 F. Supp. 3d at 563 n.8 (construing Rule 12(b)(3) motion as a motion to dismiss under forum non conveniens); SingularDTV GmbH, 2022 WL 6771081, at *2-3 (same and collecting cases). Accordingly, the Court construes Defendants' Rule 12(b)(3) motion as a motion based on forum non conveniens.

was invalid for such reasons as fraud or overreaching.'" Id. at 383-84 (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972)).

### B. PNC Bank was not required to file its suit in the District of Columbia

As an initial matter, the parties do not dispute that the forum-selection clause in the various loan agreements was reasonably communicated to Defendants. Indeed, Defendants are signatories to the loan agreements. See, e.g., Compl. Exs. 1, 2, 7-9, 11; see also Martinez, 740 F.3d at 217 (concluding that the first prong is satisfied where "the clause was reasonably communicated to the party resisting enforcement"). Consequently, the first prong of the four-part analysis for determining whether to dismiss a claim based on a forum-selection clause is satisfied.

Likewise, the parties do not dispute that the language of the forum-selection clause is mandatory. See ECF No. 22 at 3; ECF No. 24 at 2. The forum-selection clause provides that "[t]he Borrower hereby *irrevocably consents to the exclusive jurisdiction* of any state or federal court in the county or judicial district where the Bank's office indicated above is located." Compl. Ex. 1, § 10.16 (emphasis added). That type of language is "precisely the type of language that courts have routinely relied upon to find forum selection clauses to be mandatory." Moose Toys Pty, Ltd. v. Creative Kids Far E. Inc., 195 F. Supp. 3d 599, 603-04 (S.D.N.Y. 2016) (finding forum-selection clause mandatory because it provided that "each party submits to the exclusive jurisdiction of the courts of Victoria, Australia") (citation omitted); see Phillips, 494 F.3d at 386 ("A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language.") (citation omitted); George V Eatertainment S.A. v. Elmwood Ventures LLC, No. 22-CV-8047 (JLR), 2023 WL 2403618, at *5 (S.D.N.Y. Mar. 8, 2023) (finding forum-selection clause was

5

mandatory where it stated that the "parties irrevocably submit to the exclusive jurisdiction of the Courts of London") (internal quotation marks omitted).

The crux of the parties' dispute centers on the third prong and whether the forum-selection clause applies to an action commenced by PNC Bank. PNC Bank argues that it does not, because the clause applies only to Defendants and therefore does not limit PNC Bank's choice of forums. See ECF No. 24 at 2-3. Conversely, Defendants argue that PNC Bank was required to assert its claims arising out of the agreements that had forum-selection clauses specifying exclusive jurisdiction in the courts of Washington, D.C. in those courts, and not in New York.[3] See ECF No. 22 at 1. Defendants' interpretation of the forum-selection clause finds no support in the text of the clause.

When determining the applicability of a forum-selection clause to a plaintiff's claims, the Second Circuit has instructed courts to focus on the precise language of the clause. See Phillips, 494 F.3d at 389-90 (highlighting the "language-specific nature of this inquiry") (citation omitted). Indeed, as Defendants recognize (see ECF No. 22 at 3), determining whether a forum-selection clause should be enforced against a party focuses "on the language of the contract." Phillips, 494 F.3d at 386; see also Lazare Kaplan Int'l Inc. v. KBC Bank N.V., 337 F. Supp. 3d 274, 291 (S.D.N.Y. 2018) ("[T]he scope of a forum selection clause depends on the language of the clause itself.") (citation omitted).

As is relevant to the instant motion, the forum-selection clause states: "The Borrower hereby irrevocably consents to the exclusive jurisdiction of any state or federal court in the county or judicial district where the Bank's office indicated above is located; provided that

---

[3] Defendants do not dispute that some of the loan agreements had clauses specifying exclusive jurisdiction in New York and that therefore some of PNC Bank's claims are properly brought here. See ECF No. 22 at 1; ECF No. 29 at 7.

6

nothing contained in this Agreement will prevent the Bank from bringing any action, enforcing any award of judgment or exercising any rights against the Borrower individually, against any security or against any property of the Borrower within any other county, state or other foreign or domestic jurisdiction." Compl. Ex. 1, § 10.16. The parties do not dispute that for each of the relevant loan agreements, the "bank's office listed above" is in the District of Columbia.

As written, the forum-selection clause has two parts. The first half of the clause states that "[t]he *Borrower* hereby irrevocably consents to the exclusive jurisdiction of" the courts in the District of Columbia. Compl. Ex. 1, § 10.16 (emphasis added). This part of the forum-selection clause identifies only the "Borrower." It does not say that "Borrower and the Bank" irrevocably consent, or even that "all signatories" to the agreement irrevocably consent—examples of language that could signal that the parties agreed that both Defendants and PNC Bank would be bound by this part of the clause. The first part of the forum-selection clause thus applies only to the Borrower (here, Defendants), and therefore the language of the forum-selection clause that mandates exclusive jurisdiction in the District of Columbia unambiguously applies only to Defendants.

The text of the second half of the forum-selection clause further buttresses that conclusion. The second part of the clause states, in relevant part, that "nothing contained in this Agreement will prevent the *Bank* from bringing *any action* . . . within any other county, state or other foreign or domestic jurisdiction." Compl. Ex. 1, § 10.16 (emphasis added). Here, too, the clause expressly identifies only one party to the agreement—the "Bank." It makes no mention of the "Borrower." Read as a whole, it is plain that the forum-selection clause's irrevocable consent to the jurisdiction of the courts in Washington D.C. applies only to Defendants. It requires

Defendants to commence an action in the District of Columbia but allows PNC Bank to commence an action in any jurisdiction.[4]

In an effort to avoid this conclusion, Defendants argue that the second half of the clause "can be harmonized with exclusive jurisdiction by recognizing that it allows" for enforcement or ancillary proceedings to be brought "elsewhere, though primary determinations of liability must be brought in Washington, DC." ECF No. 22 at 3. Stated otherwise, Defendants contend that PNC Bank had to engage in "a two-step process:" it had to file suit in Washington D.C. to obtain a determination of Defendants' liability under the loan agreements, and then come to New York to enforce that judgment by commencing a foreclosure action on the property here. See ECF No. 29 at 5. Defendants' interpretation of the forum-selection clause wholly ignores the text of the clause.

The clause states that "nothing contained in this Agreement will prevent the Bank from bringing *any action*, *enforcing any award* of judgment or *exercising any rights* against the Borrower." Compl. Ex. 1, § 10.16 (emphasis added). The use of the phrase "any action" is broad and certainly broader in scope than "ancillary" or "enforcement" proceedings. See, e.g., Lazare Kaplan, 337 F. Supp. 3d at 292 (describing use of "any action" in forum-selection clause as "broad"). Defendants' proposed two-step process effectively renders meaningless the phrases "any action," "any rights," and "any award" in the clause. As the Second Circuit has warned, "contract interpretations that render provisions of a contract superfluous" are disfavored. Int'l Multifoods Corp. v. Commercial Unions Ins. Co., 309 F.3d 76, 86 (2d Cir. 2002) (citations

---

[4] Defendants do not contend that the non-mutuality of the forum-selection clause renders it unenforceable. In any case, as PNC Bank points out (see ECF No. 24 at 2), such clauses are routinely enforced by courts in this Circuit. See, e.g., Wagley v. JP Morgan Chase Bank, N.A., No. 18-CV-8668 (PGG), 2019 WL 13223235, at *7 (S.D.N.Y. Sept. 10, 2019) (citing cases where non-mutual forum-selection clauses were enforced).

omitted); Sanchez v. Clipper Realty, Inc., No. 21-CV-8502 (KPF), 2022 WL 16578981, at *7 (S.D.N.Y. Oct. 31, 2022) (explaining that "contracts are construed to give meaning to every word whenever possible") (citation omitted). Accordingly, the forum-selection clause in the operative loan agreements do not cover causes of action brought by PNC Bank, and therefore PNC Bank was not required to have commenced this action in the District of Columbia.

Moreover, and as Defendants do not dispute, PNC Bank instituted this action to foreclose on a Manhattan property whose mortgages secure the debt owed by Defendants. See Compl. ¶¶ 1, 74-87, 105-20. Only a New York court can grant PNC Bank the relief it seeks. The mortgaged property is located in New York, and "[t]he courts of one State may not decide issues directly affecting title to real property located in another State." Clark Tower, LLC v. Wells Fargo Bank, N.A., 178 A.D.3d 547, 547 (1st Dep't 2019) (citation and internal quotation marks omitted). What's more, all Defendants consented to the exclusive jurisdiction of New York courts in loan documents memorializing their obligations to repay PNC Bank. See Compl., Ex. 7, § 9.15 ("The Borrower hereby irrevocably consents to the exclusive jurisdiction of any state or federal court in New York County or the State of New York."); id. Ex. 9, § 19 (Governing Law and Jurisdiction for agreement between "LRM" and PNC Bank); id. Ex. 11, § 15; id. Ex. 12, § 20; see also Compl. ¶ 9. New York is thus the appropriate venue for PNC Bank's foreclosure action and Defendants consented to jurisdiction in New York.

## **CONCLUSION**

For the reasons set forth, Defendants' motion to dismiss is denied.

**SO ORDERED.**

DATED:      New York, New York
            April 17, 2023

_____
VALERIE FIGUEREDO
United States Magistrate Judge